## INDUSTRIAL FINANCE CORPORATION v. COMMUNITY FINANCE CO. et al.

(Circuit Court of Appeals, Fifth Circuit.   November 24, 1923.)

No. 4065.

1. **Courts** ⬷⟹259—**Federal courts not affected by state statute excluding unlicensed foreign corporations from "courts."**

Rev. St. Tex. art. 1318, providing that no foreign corporation, which has not filed copies of its articles of incorporation in the office of the secretary of state shall maintain a suit "in any of the courts of this state," does not apply to federal courts within the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Court (of Justice).]

2. **Trade-marks and trade-names and unfair competition** ⬷⟹92—**Protection given in use of trade-name which has acquired secondary meaning.**

A bill alleging that the name "Morris Plan Bank" has acquired such a meaning as to indicate to the public a bank organized by complainant, and to be no longer associated in the public mind with the originator of that plan, *held* to state a cause of action for an injunction to restrain defendants from advertising and representing to the public that a bank they are organizing is a "Morris Plan" bank.

Appeal from the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Suit in equity by the Industrial Finance Corporation against the Community Finance Company and others.  Decree for defendants, and complainant appeals.  Reversed and remanded.

George Thompson, Jr., of Fort Worth, Tex., and Ellis Douthit, of Sweetwater, Tex. (R. Randolph Hicks and Satterlee, Canfield & Stone, all of New York City, and Thompson, Barwise, Wharton & Hiner, of Fort Worth, Tex., on the brief), for appellant.

W. L. Coley, of Fort Worth, Tex., for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge,

BRYAN, Circuit Judge.  This suit presents the question of the right of appellees to represent that they are organizing a bank on the "Morris Plan" of industrial banks, or industrial banking.

According to the allegation of appellant's bill in March, 1910, A. J. Morris organized in the city of Norfolk, Va., a company for the purpose of conducting a loan and savings business, for the accommodation of industrial workers, small tradesmen, and craftsmen of different kinds, who had no standing for credit in commercial banks, and who for that reason theretofore had been compelled to apply for credit to pawnbrokers and others, who exacted high rates of interest, with the result that it was difficult and often impossible for such borrowers to repay the loans extended to them.  The plan incorporated by Morris contemplated the issuance of debenture certificates, usually in the amount of $50, to be matured by the payment of weekly installments; that loans would be made at 6 per cent. per annum and be evidenced by notes payable one year after date; and that borrowers would be

⬷⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

required to assign the debenture certificates as collateral. The purposes of the plan were to enable the company organized by Morris to make reasonable profits, and also to enable a borrower to create a fund by weekly deposits on his indebtedness, and thus to meet his obligation. The plan proved to be successful.

In 1911 Morris organized a company at Atlanta, and in 1912 two additional companies, one at Baltimore, and the other at Washington. In organizing these companies Morris found it necessary to take stock in them, and soon found that the development of his plan was beyond his financial means. In 1912 he organized a company with an authorized capital of $300,000, to which he and his associates conveyed all their rights, including copyrights of literature, stock in companies already organized, and all rights to the trade-names by which such companies were becoming known, which were "Morris Plan of Industrial Banks," "Morris Plan of Industrial Banking," or simply "Morris Plan." In 1914 it was found advisable, on account of the growth of the plan in the establishment of banks in various cities under it, to incorporate the appellant company, with a capital stock of $1,500,000, to which was transferred all of the assets, including the trade-names and the good will of the earlier company. The capital stock of the appellant is now more than $4,000,000.

The appellant has spent large sums in advertising and establishing the names by which banks organized under this plan became known, has built up a profitable business, has protected the public investing in such institutions from being misled and deceived, has established such institutions on a firm basis in the business world, enjoys the confidence of the public, and has carefully avoided creating the impression that such institutions can be organized as "get rich quick" concerns, or as returning more than reasonable profits. By reason of the designation given to banks organized by the appellant, it is profitable to it to organize banks in cities of the size of Fort Worth.

The appellees, with intent to defraud and deceive the public, are undertaking to organize a banking institution, and are advertising in the newspapers that they are organizing a "Morris Plan" bank in Fort Worth, and in such advertisements are representing that yearly dividends of from 16 to 30 per cent. will be earned upon the capital stock. The bill prays for an injunction restraining the appellees from advertising or representing that they are organizing a "Morris Plan" bank, and from using language calculated to lead the public so to believe. The District Court granted a motion by the appellees to dismiss the bill.

[1] The bill contains no averment that the appellant had filed its articles of incorporation in the office of the secretary of state, and the appellees insist that the appellant has not the right to maintain its suit in view of article 1318 of the Revised Statutes of Texas, which provides, in substance, that no foreign corporation shall maintain a suit "in any of the courts of this state," whether arising out of contract or tort, unless the corporation has filed its articles of incorporation in the office of the secretary of state. It is doubtful if the statute applies to a case like this, even in a state court of Texas; but, however that may be, it is clear that the Legislature was not attempting to interfere with the jurisdiction of a federal court sitting in that state.

[2] For the purposes of this appeal, the averments of the bill are to be taken as true. It is well settled that the acts of the appellees would constitute unfair competition, if they had been done in connection with the manufacture of goods. In 5 Pomeroy's Equity Jurisprudence, § 2005, it is said:

"When one imitates the goods, forms of packages, labels, or name of his business competitor in such a way as to deceive the public, he may be enjoined at the suit of such competitor. The ground for this jurisdiction is the general one of the prevention of fraud. * * * The wrong consists of deceiving the public to the injury of plaintiff."

See, also, Nims on Unfair Competition and Trade-Marks, §§ 11 and 36.

According to the averments of the bill, "Morris Plan" banks have acquired such a meaning as to indicate to the public banks organized by the appellant, and are no longer associated in the public mind with the originator of that plan. The principle that protection will be afforded against unfair competition in the use of the trade-mark of a manufacturer which has acquired a secondary meaning has been recognized and applied in two recent decisions by this court. McIlhenny v. Gaidry, 253 Fed. 613, 165 C. C. A. 239; Trappey v. McIlhenny Co. (C. C. A.) 281 Fed. 23. We are of opinion that this principle, announced in the McIlhenny Cases, is applicable to the instant case. See also, Atlas Assurance Co. v. Atlas Insurance Co., 138 Iowa, 228, 112 N. W. 232, 114 N. W. 609, 15 L. R. A. (N. S.) 625, 128 Am. St. Rep. 189.

Surely it is as great a wrong to palm off one's bank as the bank of another as it is to palm off one's goods as the goods of another. Undoubtedly the appellees have the right to organize a bank which shall contain every feature that characterizes such a bank as is described in appellant's bill of complaint. But they have not the right to so describe, represent, or advertise their business venture as that of the appellant. To do so is to perpetrate a fraud upon the public, and to injure the appellant's property rights.

The decree appealed from is reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.