In the Matter of Todd M. COMSTOCK, Jean M. Comstock, Debtors.

Loren WETZEL, Trustee of the estate of Todd M. Comstock and Jean M. Comstock, Plaintiff,

v.

Vernon GOLDSMITH, Defendant,

and

Lee Heward, dba Lee's Custom Concrete, Additional Defendant on Counterclaim.

Lee HEWARD, dba Lee's Custom Concrete, Additional Defendant on Counterclaim and Counterclaimant,

v.

Vernon GOLDSMITH, Defendant,

and

Todd M. Comstock and Jean M. Comstock, Debtors.

Bankruptcy No. 80–0432.

United States Bankruptcy Court, D. Idaho.

Nov. 25, 1981.

Larry E. Prince, Boise, Idaho, for plaintiff Loren Wetzel.

William F. Lee, Boise, Idaho, for defendant Goldsmith.

Steven K. Ricks, Boise, Idaho, for defendant Heward.

MERLIN S. YOUNG, Bankruptcy Judge.

On August 14, 1981, defendant Goldsmith was awarded a judgment dismissing an action brought against him by one Lee Heward for recovery of sums allegedly due under a contract for construction of retaining walls and other concrete work originally contracted for by one Comstock, a debtor seeking relief under Title 11, U.S.C. The work was done upon property then owned by Comstock but sold to Goldsmith before the work was completed. The action was removed to Bankruptcy Court from the Idaho State District Court. The sole issue now remaining is whether the defendant Goldsmith is entitled, in U. S. Bankruptcy Court, as the prevailing party, to attorney's fees incurred in the defense of the removed action pursuant to Idaho Code 12–120(2), which provides:

"In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."

To decide this issue the applicability of Idaho Code 12–120 in United States Courts must be determined. (1) Are U. S. Courts required to give effect to such provisions in removed cases and (2) if so, does it apply to this case? I conclude that the answer to the first question is yes, and to the second, the answer is no.

The determination of the first question necessarily entails an analysis of the jurisdiction of the bankruptcy court and the relationship between state and federal law in federal courts. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), established the doctrine that federal courts sitting as an alternative forum to state courts in diversity of citizenship cases must follow the state's substantive law.

Bankruptcy courts now sit as an alternative forum to state courts in civil cases "arising in or related to cases under title 11." 28 U.S.C. § 1471. *Erie* settled the issue in diversity cases but in cases where the federal court's jurisdiction is based upon a "federal question" rather than diversity, there is a difference of opinion. See Weston and Lehman, "Is There Life For Erie After The Death of Diversity?" 78 Mich. L.R. 311 (1980). See also Hill, "The *Erie* Doctrine in Bankruptcy" 66 Harvard Law Review 1013 (1953).

 It is arguable that due to the broad scope of 28 U.S.C. 1471, all law in bankruptcy matters is federal. Historically, federal courts follow the "American Rule" which denies attorney's fees to a litigant in the absence of a contract, applicable statute, or certain exceptions known as the "common fund", "private attorney general", or "vexatious litigation" exceptions. *Alyeska Pipeline Service Co. v. Wilderness*

*Society et al.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Annot., 8 L.Ed.2d 894, "Prevailing Party's Right To Recover Counsel Fees in Federal Court"; 20 Am.Jur.2d Costs §§ 74, 75. However, the "American Rule" is not determinative when the federal court sits in a diversity situation. The bankruptcy court in the consideration of removed actions is in a position directly analogous to the U. S. District Court in diversity cases. I therefore conclude that the *Erie* rules applicable in diversity situations govern this court in removed state court actions.

The basic rule was stated in *Alyeska, supra,* 421 U.S. at 259, n. 31, 95 S.Ct. at 1622, n. 31:

"A very different situation is presented when a federal court sits in a diversity case. '[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.' 6 J. Moore, Federal Practice ¶ 54.77[2], pp. 1712–1713 (2d ed. 1974) (footnotes omitted). See also 2 S. Speiser, Attorneys' Fees §§ 14:3, 14:4 (1973) (hereinafter Speiser); Annotation, Prevailing Party's Right to Recover Counsel Fees in Federal Courts, 8 L.Ed.2d 894, 900–901. Prior to the decision in *Erie R. Co. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938), this Court held that a state statute requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts: '[I]t is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases. It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts.' *People of Sioux County v. National Surety Co.,* 276 U.S. 238, 243 [48 S.Ct. 239, 240, 72 L.Ed. 547] (1928). The limitations on the awards of attor-

neys' fees by federal courts deriving from the 1853 Act were found not to bar the award. Id., at 243–244 [48 S.Ct. at 240]. We see nothing after *Erie* requiring a departure from this result. See *Hanna v. Plumer,* 380 U.S. 460, 467–468 [85 S.Ct. 1136, 1141, 14 L.Ed.2d 8] (1965). The same would clearly hold for a judicially created rule, although the question of the proper rule to govern in awarding attorneys' fees in federal diversity cases in the absence of state statutory authorization loses much of its practical significance in light of the fact that most States follow the restrictive American rule. See 1 Speiser §§ 12:3, 12:4."

This rule has been followed by the Court of Appeals for the 9th Circuit. See e.g. *Klopfenstein v. Pargeter,* 597 F.2d 150 (9th Cir. 1978), *Schultz v. Lamb,* 591 F.2d 1268 (9th Cir. 1978); *Interform Company v. Mitchell,* 575 F.2d 1270 (9th Cir. 1978). In *Interform, supra,* the U. S. District Court for the State of Idaho had denied the prevailing party attorney's fees in an action on a public works surety bond. The Court of Appeals found that, while the District Court was correct in looking to Idaho law to determine the contractual issue involved in the case, it erred with regard to the attorney's fees question since the Idaho Code provided that, in actions brought upon public contractor's bonds, the prevailing party shall recover a reasonable attorney's fee to be taxed as costs. The court stated:

"We must, of course, follow Idaho law as to attorney's fees in this diversity action; see *People of Sioux County v. National Surety Co.,* 276 U.S. 238, 48 S.Ct. 239, 72 L.Ed. 547 (1928); 6 Moore's Federal Practice ¶ 54.77(a) at 1712–13 (1976)."

In the case of *Sioux County,* referred to by both the Court of Appeals for the 9th Circuit and the U. S. Supreme Court, in *Alyeska,* an action was brought by the county against a surety on its bond guaranteeing public funds on deposit in a defunct bank. An attorney's fee was provided for by statute. The case was removed to federal district court as a diversity case where plaintiff was awarded a judgment on the

bond and an attorney's fee. The Court of Appeals reversed, disallowing recovery on the bond as well as the attorney's fee. It struck down the fee award on the ground that the state statute classified such an award as costs, and that costs in the federal courts were regulated exclusively by federal statute. The U. S. Supreme Court reversed and held that the state provision established a right to recover sums expended for legal services even though they were characterized as costs by the state law. The U. S. Supreme Court stated:

"Whether this liability for an attorney's fee, assumed by entering into an insurance contract after the enactment of the statute providing for the liability, may be enforced in the federal courts does not depend on any nice distinctions which may be taken between the right created and the remedy given. Disregarding mere matters of form it is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases. It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts.

That the statute directs the allowance, which is made to plaintiff, to be added to the judgment as costs are added does not make it costs in the ordinary sense of the traditional, arbitrary and small fees of court officers, attorney's docket fees and the like, allowed to counsel by R.S. §§ 823, 824.

The present allowance, since it is not costs in the ordinary sense, is not within the field of costs legislation covered by R.S. §§ 823, 824. That the particular mode of enforcing the right provided by the state statute—i.e., by taking the allowance as costs—is not available to the federal courts under R.S. §§ 823, 824 does not preclude the recovery. Since the right exists the federal courts may follow their own appropriate procedure for its enforcement by including the amount of the fee in the judgment."

■ Both the *Sioux County* and *Interform* cases are persuasive herein because Idaho Code 12–120(2) is a statement of state policy substantive in nature. It grants fees, without any qualifications, to a prevailing party in specified kinds of litigation. This court has previously followed the view that, if the fees are labeled as costs in the state statute, the statute is not effective in removed state litigation. I now conclude this position is erroneous when applied to statutes such as Idaho Code 12–120(2).

The same is not true, however, of Idaho Code 12–121. That section provides:

"In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees."

This provision is discretionary and it has been modified in its application in Idaho courts by the Idaho Rule of Civil Procedure, 54(e)(1), as follows:

"In any civil action the court may award reasonable attorney fees to the prevailing party or parties as defined in Rule 54(d)(1)(B), when provided for by any statute or contract. Provided, attorney fees under section 12–121, Idaho Code, may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation; but attorney fees shall not be awarded pursuant to section 12–121, Idaho Code, on a default judgment. [Adopted January 2, 1979, effective March 1, 1979.]"

This statute, as interpreted by the rule, is procedural. Unlike Idaho Code 12–120(2), it does not grant a substantive right for additional relief in specific actions. It deals instead with the inherent right of courts to control, when circumstances demand, vexatious practices before them. As noted in *Alyeska, supra*, one of the well-recognized equitable exceptions to the "American Rule" allows a federal court to award fees

where a party acts in bad faith or vexatiously; this is similar in thrust and effect to the power granted Idaho courts under Idaho Code 12–121. Thus in Federal courts, fees, in those rare situations where the circumstances or actions of parties so demand, may be awarded as a matter of federal law.

 However, Idaho Code 12–120(2) is not applicable in this case because its application is limited to specific types of litigation none of which were involved in this case. All of the specified types are those which, under normal circumstances, involve an indebtedness which can be determined by objective facts and simple mathematical computations. It appears that the policy of the statute is that in such litigation the losing party will be presumed to have acted in bad faith and thus the prevailing party should be made whole by the award of attorney's fees.

Further, the litigation instituted by Heward cannot be considered to have been in bad faith or vexatious in the sense contemplated by federal law.

I thus find no fees can be awarded to defendant Goldsmith in this matter.